1

2

3

4

5

6

IN THE UNITED STATES DISTRICT COURT

7

FOR THE DISTRICT OF ARIZONA

8

9 | Robert Lowe,      No. CV-17-00477-PHX-BSB

10          Plaintiff,      **ORDER**

11 | v.

12 | M.A. Mortenson Company,

13          Defendant.

14

15      Defendant M.A. Mortenson Company (Mortenson) has filed a motion for

16 judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil

17 Procedure. (Doc. 34.) Plaintiff Robert Lowe opposes the motion. (Doc. 39.) For the

18 reasons below, the Court grants the motion.

19 | **I.**      **Procedural and Factual Background**

20      In December 2016, Plaintiff commenced this action in the Maricopa County

21 Superior Court against Defendants Mortenson and Rosendin Electric, Inc. (Rosendin).

22 (Doc. 34, Ex. 1.)[1] The Complaint included two counts. In Count One, Plaintiff asserted

23 that Defendants wrongfully discriminated against him and removed him from his job in

24 violation of the Arizona Medical Marijuana Act (AMMA), Ariz. Rev. Stat. § 36-2813(B),

25 and therefore violated the Arizona Employment Protection Act (AEPA), Ariz. Rev. Stat.

26 § 23-1501. (*Id.* at Ex. 1, ¶¶ 33-40.) In Count Two, Plaintiff asserted a claim of

27

28      [1] Exhibit 1 to docket 34 is a copy of the Complaint. The Complaint also appears at docket 1 at 14-19.

1    retaliatory discharge alleging that Defendants violated § 23-1501(c)(ii) of the AEPA

2    because Rosendin and Mortenson terminated Plaintiff for disclosing that they had

3    violated a state statute.  (*Id*. at Ex. 1. ¶¶ 41-49.)  Thus, Plaintiff alleged two state law

4    claims.

5           In February 2017, Rosendin and Mortenson removed this action to this Court and

6    invoked diversity jurisdiction. (Doc. 1 at 3-4.)  Defendants also invoked federal question

7    jurisdiction based on their assertion that Plaintiff's state law claims are preempted by

8    § 301 of the Labor Management Relations Act (LMRA).  (Doc. 1 at 6-11.)  Plaintiff has

9    not challenged this Court's jurisdiction.  On April 4, 2017, pursuant to a stipulation

10   between Plaintiff and Rosendin, the Court dismissed Rosendin.  (Doc. 25.)  Plaintiff

11   acknowledges that Count Two asserted a claim only against Rosendin and he "concedes

12   its dismissal against Mortenson."  (Doc. 39 at 1.)  Therefore, the only remaining claim is

13   Count One against Mortenson.

14          **A.     Plaintiff's Allegations**

15          Plaintiff worked as an electrical foreman in mid-2016 for Rosendin on the Tilden

16   Project, a large construction project in Arizona.  (Doc. 34 at Ex. 1, ¶ 8.)  Plaintiff was a

17   member of Local Union 640 of the International Brotherhood of Electrical Workers

18   (IBEW or Union).   (Doc. 1 at 41, ¶ 4.)[2]   Plaintiff's employment was subject to a

19   Collective Bargaining Agreement (CBA) between Rosendin, the Union, and the Arizona

20   Chapter of the National Electric Contractors Association, Inc. (NECA).  (*Id*.) (Doc. 34,

21   Ex. 2; Doc. 1 at 43-99.)  The CBA incorporates the Arizona Chapter NECA/IBEW Local

22   640 Drug-Free Workplace Program (DFWP). (Doc. 34, Exs. 2, 3; Doc. 1 at 43-99, 101-

23   20.)[3]

24

25

26   [2]  Pages 40-41 of docket 1 include the Declaration of Julie Moss in support of
     removal.  (Doc. 1 at 40-41.)  Defendant cites to this declaration as exhibit K to docket 1.

27   (Doc. 34 at 2.)   The Court cites the CM/ECF docket and page number because the
     "lettered" exhibits to docket 1 are not docketed in that manner.

28   [3]  The Complaint, CBA, and DFWP are included in the record with the notice of
     removal.  (Doc. 1; Doc. 34, Exs. 1, 2, 3.)

1    Mortenson subcontracted with Rosendin to provide electrical work on the Tilden

2  Project.  (Doc. 34 at Ex. 1, ¶¶ 8, 10.)  Plaintiff alleges that Rosendin and Mortenson were

3  joint employers because Mortenson supervised and controlled the work Rosendin

4  performed.  (*Id*. at Ex. 1, ¶¶ 10, 36.)  On July 12, 2016, Plaintiff was serving temporarily

5  as a "spotter" for a forklift operator when the forklift operator hit the corner of a

6  switchboard that was scheduled for demolition, and dropped the material he was carrying

7  on the forklift.  (*Id*. at Ex. 1, ¶¶ 11-12.)  After the incident, Plaintiff was drug-tested on

8  site.  (*Id*. at Ex. 1, ¶ 15.)  Plaintiff told the person performing the drug test that he was a

9  medical marijuana cardholder and that he would likely test positive for

10  tetrahydrocannabinol (THC).  (*Id*. at Ex. 1, ¶ 16.)  Plaintiff tested positive for THC and

11  was sent home from the worksite.  (*Id*. at Ex. 1, ¶¶ 18, 20.)  Plaintiff alleges that he was

12  subsequently "banned from the Tilden project by M.A. Mortenson" and "forced to take a

13  'small projects' position with Rosendin."  (*Id*. at Ex. 1, ¶¶ 25-27.)  Plaintiff protested his

14  termination to Mortenson in writing on August 11, 2016, and informed Mortenson of the

15  AMMA.  (*Id*. at Ex. 1, ¶ 30.)  On September 9, 2016, Rosendin terminated Plaintiff's

16  employment.  (*Id*. at Ex. 1, ¶ 31.)

17          **B.     The Statutory Basis for Plaintiff's Claim**

18          In Count One, Plaintiff asserts a wrongful termination claim based on state law.

19  However, the statutory basis for Plaintiff's claim is not clear.  The Complaint labels

20  Count One as "wrongful termination under the AMMA."  (Doc. 34, Ex. 1.)  The AMMA

21  provides that "an employer may not discriminate against a person in hiring, termination

22  or imposing any term or condition of employment or otherwise penalize a person" based

23  upon "the person's status as a [medical marijuana] cardholder," or "positive drug test for

24  marijuana components or metabolites, unless the [person] used, possessed, or was

25  impaired by marijuana on the premises of the place of employment during the hours of

26  employment."  Ariz. Rev. Stat. § 36-2813(B)(2). Plaintiff alleges that the AMMA is the

27  "public policy of the State of Arizona" and that Mortenson "wrongfully terminated

28

1    [Plaintiff] and/or discriminated against Plaintiff in violation of this statute, and thus

2    violated Ariz. Rev. Stat. § 23-1501." (Doc. 34 at Ex. 1, ¶¶ 35, 37.)

3         Section 23-1501(A)(3) provides that "[a]n employee has a claim against an

4    employer for termination of employment" if "(a) the employer has terminated the

5    employment relationship of an employee in breach of an employment contract," or

6    "(b) [t]he employer has terminated the employment relationship in violation of a statute

7    of this state." Ariz. Rev. Stat. § 23-1501(A)(3)(a) and (b). Section 23-1501(A)(3) further

8    provides that "[i]f the statute does not provide a remedy to an employee for the violation

9    of that statute, the employee shall have the right to bring a tort claim for wrongful

10   termination in violation of the public policy set forth in the statute." Ariz. Rev. Stat.

11   § 23-1501(A)(3)(b). The AMMA does not provide a remedy for an employee who

12   alleges a violation of § 36-2813(B). Thus, the Complaint appears to rely on the AEPA

13   § 23-1501(A)(3)(b) to allege a tort claim for wrongful termination in violation of the

14   public policy set forth in the AMMA. (Doc. 34, Ex. 1 at ¶¶ 35, 37.)

15        The parties' briefing, however, describes Count One as asserting a violation of the

16   AMMA § 36-2813(B), based on Plaintiff's termination after testing positive for

17   metabolites of marijuana (Doc. 34 at 3; Doc. 39 at 1, 4; Doc. 40 at 1, 3), and ignores the

18   Complaint's citation to § 23-1501 of the AEPA. In his response, Plaintiff describes

19   Count One as "specifically, . . . alleging Defendant Mortenson (as a joint employer)

20   violated the [AMMA]." (Doc. 39 at 1.) Plaintiff further states that his Complaint "did

21   not allege a claim in tort under either state common law or contract theories." (*Id.* at 4.)

22   Plaintiff cites *Hadley v. Pac. Gas and Elec., Co.*, 933 F.2d 104 (9th Cir. 1991), and

23   describes that case as holding that common law tort claims are preempted. (*Id*.) He

24   argues that his claim is distinguishable from the common law tort claims at issue in

25   *Hadley* because "there is simply no 'common law tort' in Arizona for medical marijuana

26   discrimination." (*Id*.)

27        Thus, by omitting any reference to the AEPA § 23-1501 in his response to

28   Defendant's motion, it appears Plaintiff intended to limit Count One to a claim based

- 4 -

1  solely on the AMMA § 36-2813(B).  (*See also* Doc. 27 at 2 (stating that Plaintiff brings a

2  claim of "[d]iscrimination/unlawful termination under the [AMMA], § 36-2813(B).")

3  Therefore, the Court considers whether Plaintiff's claim of wrongful termination under

4  the AMMA, § 36-2813(B), is preempted by § 301 of the LMRA.

5          **C.**     **Private Right of Action under the AMMA**

6         The Court, however, does not address whether Plaintiff can maintain an

7  independent cause of action under the AMMA § 36-2813(B).  As the Ninth Circuit has

8  explained, "[w]hether a statute grants a private right of action is not a jurisdictional

9  question." *Kobold v. Good Samaritan Reg'l Med., Ctr.,* 832 F.3d 1024, 1039 (9th Cir.

10 2016) (citations omitted).  "Nor is deciding the private right of action question an

11 essential prerequisite to conducting a § 301 preemption inquiry." *Id*.  Therefore, the

12 court may address whether Plaintiff's claim is preempted without determining whether

13 the AMMA creates a private right of action.  That issue arises only if Defendant's

14 preemption argument fails. *Id*.

15        Furthermore, the briefing does not address whether § 36-2813(B) creates or

16 implies a private cause of action.  Defendant did not raise this issue in its motion.

17 (Doc. 34.)  In his response, Plaintiff does not directly argue that § 36-2813(B) creates a

18 private cause of action.  (Doc. 39.)  Instead, Plaintiff cites out-of-district cases that found

19 implied private rights of action under anti-discrimination provisions of medical marijuana

20 statutes that are similar to § 36-2813(B) of the AMMA.  (Doc. 39 at 11 (citing *Noffsinger*

21 *v. SSC Niantic Operating Co. LLC*, 2017 WL 3401260, at \*10 (D. Conn. Aug. 8, 2017);

22 *Callaghan v. Darlington Fabrics, Corp*., 2017 WL 2321181, at \*8 (Sup. Ct. RI. May 23,

23 2017).)  Defendant's reply does not address the private cause of action issue.  (Doc. 40 at

24 11.)

25        The Arizona courts have not determined whether § 36-2813(B) creates or implies

26 a private cause of action.  In *Gersten v. Sun Pain Mgmt, PLLC,* 395 P.3d 310, 313-14

27 (Ariz. Ct. App. 2017), the Arizona Court of Appeals held that a qualifying patient may

28 not assert a private cause of action for an alleged violation of AMMA § 36-2813(C)

1   against his or her treating physician.  *Gersten*, 395 P.3d at 313-14.  The court compared

2   § 36-2813(C)   with   §§ 36-2813(A)   and   (B),   and   noted   that,   "unlike   these

3   provisions, . . . § 36-2813(C) imposes no affirmative obligation on a physician to treat or

4   continue treating a qualified patient."  *Id*.  However, because the issue was not before it,

5   the court did not determine whether a private cause of action existed against an employer

6   under §§ 36-2813(A) or (B).  *Gersten*, 395 P.3d at 312 n.2.  Because the parties have not

7   squarely raised the issue of whether the AMMA § 36-2813(B) creates a private cause of

8   action, and resolution of that issue is not necessary to the Court's determination of

9   Defendant's assertion of preemption, the Court does not resolve that issue.

10   **II.      Standard for Judgment on the Pleadings**

11          Under Rule 12(c), a party may move for judgment on the pleadings "[a]fter the

12   pleadings are closed—but early enough not to delay trial."  Fed. R. Civ. P. 12(c).  The

13   standard governing a Rule 12(c) motion for judgment on the pleadings is "functionally

14   identical" to that governing a Rule 12(b)(6) motion to dismiss for failure to state a claim.

15   *Caffaso, .S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054-55 n.4 (9th Cir.

16   2011).    When  analyzing  a  Rule  12(c)  motion,  the  court  accepts  the  nonmovant's

17   allegations as true, *see Hal Roach Studios v. Richard Feiner & Co., Inc*., 896 F.2d 1542,

18   1550 (9th Cir. 1989), and construes factual allegations in the complaint in the light most

19   favorable to the nonmovant.  *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

20   "Judgment  on  the  pleadings  under  Rule  12(c)  is  proper  when  the  moving  party

21   establishes on the face of the pleadings that there is no material issue of fact and that the

22   moving party is entitled to judgment as a matter of law."  *Jensen Family Farms, Inc. v.*

23   *Monterey Bay Unified Air Pollution Control Dist.*, 644 F.3d 934, 937 n.1 (9th Cir. 2011).

24          Generally, a court may not consider matters outside the pleadings when ruling on a

25   Rule 12(c) motion.  However, a document is not considered "outside" the pleadings if the

26   complaint specifically refers the document and the authenticity of the document is not

27   questioned.  *Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1997).  Defendant relies on

28   the CBA and the DFWP to support its motion for judgment on the pleadings.  (Doc. 34.)

1   The Complaint, however, does not refer to the CBA or the DFWP.  (Doc. 34, Ex. 1.)

2   Nonetheless, Plaintiff agrees to include these documents as part of the record.  (Doc. 39

3   at 2.)  Therefore, the Court will consider the CBA and DFWP in ruling on the motion.

4   **III.    The Arizona Medical Marijuana Act**

5           On December 14, 2010, the AMMA took effect and authorized the medicinal use

6   of marijuana.  *See* Ariz. Rev. Stat. §§ 36-2801–36-2819.  The AMMA provides that a

7   qualified patient with a "written certification issue by a physician" may obtain a medical

8   marijuana registry identification card.   Ariz. Rev. Stat. §§ 36-2801(13), (14); 36-

9   2804.02(A).  Many other states have also passed legislation permitting the medical use of

10   marijuana and have removed criminal penalties for the use, possession, and cultivation of

11   marijuana for certain individuals.  *See Raich v. Gonzales*, 500 F.3d 850, 865 (9th Cir.

12   2007) (noting that "ten states other than California . . . passed laws decriminalizing in

13   varying degrees the use, possession, manufacture, and distribution of marijuana for the

14   seriously ill.").  However, most state medical marijuana laws do not directly address the

15   employment issues related to medical marijuana use.   *See* Michael D. Moberly and

16   Charitie L. Hartsig, *The Arizona Medical Marijuana Act: A Pot Hole for Employers*, 5

17   Phoenix L. Rev. 415, 438 nn.148-49 (2012).  In contrast to the laws of other states, the

18   AMMA prohibits employers from discriminating against qualifying individuals in hiring,

19   promotion, or other terms and conditions of employment based on their status as

20   registered medical marijuana cardholders.[4]  Ariz. Rev. Stat. § 36-2813(B)(1).

21   

22           [4]  The statute specifically provides that:

23           [u]nless a failure to do so would cause an employer to lose a monetary or licensing
24   benefit under federal law or regulations, an employer may not discriminate against a
     person in hiring, termination or imposing any term or condition of employment or
     otherwise penalize a person based upon either
25   

           1.  The person's status as a cardholder.
26   

           2  A registered qualifying patient's positive drug test for marijuana components or
27   metabolites, unless the patient used, possessed, or was impaired by marijuana on the
     premises of the place of employment during the hours of employment.
28   

           Ariz. Rev. Stat. § 36-2813(B)(1), (2).

**IV.     Defendant's Motion for Judgment on the Pleadings**

In its Rule 12(c) motion, Defendant argues that Plaintiff's first cause of action—wrongful termination under the AMMA—is a state law claim that is preempted by § 301 of the LMRA, 29 U.S.C. § 185.  (Doc. 34.)  Defendant notes that the Complaint does not refer to the CBA, the DFWP, or § 301, but argues that the Court may look beyond the Complaint to determine whether Plaintiff's claim is "in fact a section 301 claim for a breach of a collective bargaining agreement 'artfully pleaded' to avoid federal jurisdiction."  (Doc. 34 at 4 (quoting *Young v. Anthony's Fish Grotto, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987)).)

In response, Plaintiff argues that the Court should not consider the application of § 301 because the Complaint alleges a state law claim that can be resolved solely by looking to the AMMA § 36-2813, and does not refer to § 301 or seek any remedy under that statute.  (Doc. 39 at 3-6.)  Although Plaintiff did not assert a violation under the LMRA, the Court may look beyond the Complaint to determine whether his claim arises under the CBA.  *See Granillo v. United Parcel Service*, 2008 WL 11339493, at *1 (D. Ariz. 2008) (stating that a whether plaintiff artfully drafted his complaint in such a way to intentionally avoid federal jurisdiction is not controlling).  Therefore, the Court considers whether Plaintiff's claim is preempted by § 301.

**A.     Section 301 Preemption**

The Supremacy Clause of the United States Constitution provides that "the Laws of the United States . . . shall be the supreme Law of the Land."  U.S. Const. art. VI, cl. 2.  Therefore, Congress may preempt a state law by means of a federal statute.  *See Oneok, Inc. v. Learjet, Inc.*, ___ U.S. ___, 135 S. Ct. 1591, 1595 (2015).  In general, a federal statute will not be found to preempt claims arising under state law unless Congress's intent to do so is "clear and manifest."  *Wyeth v. Levine*, 555 U.S. 555, 565 (2009).

Section 301(a) of the LMRA, 29 U.S.C. § 185(a), provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of

1   the United States having jurisdiction of the parties." 29 U.S.C. § 185(a).  Although § 301

2   appears to be a jurisdictional statute, the Supreme Court has explained that § 301 is not

3   simply jurisdictional.  Instead, it should be "understood . . . as a congressional mandate to

4   the federal courts to fashion a body of federal common law to be used to address disputes

5   arising out of labor contracts." *Allis-Chalmers v. Lueck*, 471 U.S. 202, 209 (1985).

6   Furthermore, "this federal common law preempts the use of state contract law in

7   [collective bargaining agreement] interpretation and enforcement." *Cramer v. Consol.*

8   *Freightways, Inc.*, 255 F.3d 683, 689 (9th Cir. 2012) (citing *Local 174, Teamsters of Am.*

9   *v. Lucas Flour Co.*, 369 U.S. 95, 103-04 (1962)).  "Once preempted, 'any claim

10  purportedly based on [a] . . . .state law is considered, from its inception, a federal claim,

11  and therefore arises under federal law.'" *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053,

12  1059 (9th Cir. 2007) (alteration in original) (quoting *Caterpillar, Inc. v. Williams*, 482

13  U.S. 386, 393 (1987)).

14        However, "not every dispute concerning employment, or tangentially involving a

15  provision of a collective-bargaining agreement, is pre-empted by section 301 or other

16  provisions of the federal labor law." *Allis-Chalmers*, 471 U.S. at 211.  To determine

17  whether a state law claim is preempted, the Ninth Circuit applies a two-step inquiry as set

18  forth in *Burnside*, 491 F.3d at 1059, and discussed in *Kobold*, 832 F.3d at 1032-34.

19  "First, a court must determine 'whether the asserted cause of action involves a right

20  conferred upon an employee by virtue of state law, not by a [collective bargaining

21  agreement].'" *Kobold*, 832 F.3d at 1032 (quoting *Burnside*, 491 F.3d at 1059).  In

22  making that determination, the court focuses on the legal character or basis of the claim,

23  not whether the facts could separately give rise to a claim based specifically on the

24  collective bargaining agreement. *Kobold*, 832 F.3d at 1033.  A claim is preempted at the

25  first step only if the legal right to bring the claim "exists solely as a result of the

26  [collective bargaining agreement]." *Id*. at 1032.  If the claim "exists independently of the

27  [collective bargaining agreement]," the court proceeds to the second step. *Id.* at 1032-33.

28

1    At the second step of the *Burnside* test, the court determines whether the claim "is

2 nevertheless substantially dependent on analysis of a collective bargaining agreement."

3 *Kobold*, 832 F.3d at 1032-33 (citation omitted).  This determination depends on "whether

4 the claim can be resolved by 'look[ing] to' versus interpreting the collective bargaining

5 agreement.  If the latter, the claim is preempted; if the former, it is not."  *Id*. at 1033.  The

6 Ninth Circuit has "stressed that, in the context of § 301 complete preemption, the term

7 'interpret' is defined narrowly—it means something more than 'consider,' 'refer to,' or

8 'apply.'"  *Id.* (citing *Balcorta v. Twentieth Century–Fox Film Corp.*, 208 F.3d 1102, 1108

9 (9th Cir. 2000)).  "Substantial dependence" on a collective bargaining agreement depends

10 on the specific facts of each case, and the distinction between "looking to" a collective

11 bargaining agreement and "interpreting" it is not always clear.  *See Balcorta*, 208 F.3d at

12 1108-09.  "The plaintiff's claim is the touchstone for this analysis; the need to interpret

13 the [collective bargaining agreement] must inhere in the nature of the plaintiff's claim.  If

14 the claim is plainly based on state law, § 301 preemption is not mandated simply because

15 the defendant refers to the [collective bargaining agreement] in mounting a defense."

16 *Cramer*, 255 F.3d at 691 (citing *Caterpillar* 482 U.S. at 398-99).

17    When the court finds a state law claim substantially dependent upon analysis of a

18 collective bargaining agreement, generally "that claim must either be treated as a § 301

19 claim, or dismissed as pre-empted by federal labor-contract law."  *Allis-Chalmers*, 471

20 U.S. at 220 (internal citation omitted).  Under § 301, when the remedies provided in the

21 collective bargaining agreement have been exhausted, judicial review is extremely

22 limited.  *See United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 36

23 (1987).

24    The parties do not dispute that Plaintiff's rights under the AMMA exist

25 independently of the CBA.  (Doc. 39 at 5-7, 10; Doc. 40 at 4 (stating that "the sole area

26 of disagreement among the parties is whether [Plaintiff's] claim is 'substantially

27 dependent' upon, or requires *interpretation* of, the CBA, under the test articulated in

28 *Kobold . . . .*").)  Therefore, the Court proceeds to the second step of the *Burnside* test and

1    determines whether Plaintiff's claim is "substantially dependent" on an interpretation of

2    the CBA and the DFWP.  *See Kobold*, 832 F.3d at 1032-33.  The Court applies this

3    standard to determine whether § 301 of the LMRA preempts Plaintiff's wrongful

4    termination claim asserted in Count One.

5    **B.     Plaintiff's Claim is Preempted**

6    Defendant asserts that Plaintiff's claim that he was terminated in violation of the

7    AMMA § 36-2813(B) is preempted by § 301 because resolution of this claim is

8    substantially dependent on an interpretation of the CBA and the DFWP, which include

9    provisions on drug testing, and the consequences of the "presence of the metabolites of

10   medical marijuana." (Doc. 34; Doc. 1 at 124; DFWP at Sec. VII.)  In response, Plaintiff

11   asserts that this claim can be resolved by reference to the AMMA § 36-2813(B)(2) and is

12   not substantially dependent on an interpretation of the CBA.  (Doc. 39 at 9.)  As set forth

13   below, the Court finds that Plaintiff's claim is substantially dependent on an

14   interpretation of the CBA and is therefore preempted under § 301 of the LMRA.

15   **1.     Plaintiff's Claim is "Substantially Dependent" on the CBA**

16   Defendant argues that the CBA governs "grievances, drug testing policy and

17   procedures, medical marijuana usage, cardholder notification, the consequences of failed

18   drug tests, and termination of employment." (Doc. 34 at 2, 5.)  Defendant further states

19   that the DFWP "covers post-accident or incident drug testing (Sec. XIV(A)(3)),

20   consequences of testing positive for medical marijuana metabolites (Sec. VII),

21   notification requirements for employees with medical marijuana prescriptions (Sec. II),

22   marijuana drug testing cutoff limits (Sec. IXX), and the employee appeals process (Sec.

23   XVII)." (*Id*. at 2, 5)  Finally, Defendant states that Plaintiff, as an electrician, was in a

24   "safety sensitive position," as defined in the DFWP, and thus subject to additional

25   requirements under the CBA.  (Doc. 34 at 5; 40 at 9; Doc. 1 at 111; DFWP at Sec. X.Q.)

26   Therefore, Defendant argues that any analysis of Plaintiff's claim that "he was removed

27   from the job site and subsequently terminated for failing a drug test despite his possession

28   of a valid medical marijuana card" requires interpretation of the terms of the DFWP,

1    which is incorporated into the CBA.[5]  (Doc. 40 at 8-9; *see also* Doc. 34 at 7 (asserting

2    that Plaintiff's claims "implicate multiple provisions of the CBA; analysis of the claims

3    will require to interpret the drug testing provisions of the CBA").)

4              As Defendant states, several provisions of the DFWP address the employees'

5    rights and obligations related to drug testing and the use of medical marijuana.  First, the

6    DFWP notes that the use of drugs and the abuse of alcohol among electrical construction

7    industry employees can significantly increase safety risks for workers and the public.

8    (Doc. 1 at 106; DFWP at Sec. II.)  Therefore, the NECA/IBEW has adopted policies

9    related to employees "performing safety-sensitive duties."  (*Id*.)  To implement these

10   policies, the DFWP places specific restrictions on employees in safety sensitive positions.

11   The DFWP provides that employees in safety sensitive positions must remain free of the

12   influence of substances that may impair their ability to perform their job duties safely,

13   including medical marijuana:

14            A person who works in a safety sensitive position is required to remain free
         from the influence of drugs, including controlled substances, alcohol, and
15        any other substance, *including medical marijuana*, that may impair the
         individual's ability to perform his or her job duties safely or productively,
16        or that may otherwise impair his or her senses, coordination or judgment
         while on duty.
17

18   (Doc. 1 at 106-07. DFWP at Sec. II (emphasis added).)  This section of the DFWP

19   requires employees to notify a company representative before starting work if they are

20   under the influence of a substance, or if they have its metabolites present in their bodies:

21            Any individual reporting to work under the influence of, or having present
         in his/her body, any drug or drug metabolite including prescribed drugs,
22        alcohol or other substance or medications that may adversely affect the
         individual's to work or perform their duties in a safe, productive or efficient
23        manner, must advise the designated company representative . . . before
         starting work or commencing an activity.
24

25   (*Id*.)

26   _____

27            [5]   The CBA, at Article XIV, Section 14.01, states that the parties have agreed to
     provide a drug-free workplace and to implement a substance abuse testing policy.
28   (Doc. 1 at 75.)  Therefore, the parties to the CBA developed the DFWP, which covers all
     employers and employees.  (*Id*.)

1      Finally, this section of the DFWP provides that an employee using medical

2  marijuana must consult with a physician or pharmacist to determine whether it may

3  interfere with job safety and, if so, the employee must use personnel procedures to avoid

4  unsafe work practices:

5          Any employee taking prescribed, over-the-counter medications *or medical
           marijuana*, will be responsible for consulting the prescribing physician
6          and/or pharmacist to ascertain whether the medication may interfere with
           the safe performance of his/her job.  If the use of a medication could
7          compromise the safety of the employee, fellow employees or the public, it
           is the employee's responsibility to use appropriate personnel procedures
8          (e.g., call in sick, use leave, request change of duty, notify supervisor or
           designated company representative) to avoid unsafe workplace practices
9          and activities.

10  (*Id*. (emphasis added).)  The DFWP defines safety sensitive positions and states:

11         Each employee in a safety sensitive position is required to maintain
           physical and mental functions undiminished and unencumbered by drugs,
12         prescription drugs, *medical marijuana* or alcohol and is expected to have
           regular, predictable attendance and must maintain a constant state of
13         alertness, and must be able to work cooperatively with others in the
           workplace.
14
           Each employee in a safety-sensitive position, who is taking a prescription
15         drug which could [a]ffect or impair job performance, *or is taking medical
           marijuana*, must disclose that to their DFW company representative or
16         other designated representative . . . of their employer prior to beginning
           safety-sensitive duty.  This requirement is independent of whether the
17         medication is taken during work hours or off hours.

18  (*Id.* at 111; DFWP at Sec. X.Q. (emphasis added).)

19      The DFWP also provides for drug testing and states that "the presence of illicit

20  drugs or unauthorized controlled substances in a required urine test . . . will result in

21  administrative action up to and including termination."  (*Id*. at 108, DFWP at Sec. VII.)

22  However, "[t]he presence of metabolites of medical marijuana authorized by state law,

23  alone, will not result in administrative action, except as required by federal law or

24  authorized by state law."  (*Id*.)

25      As Defendant argues, these provisions demonstrate that the parties negotiated

26  terms in the CBA to address their rights and obligations related to drug testing and

27  medical marijuana.  They did not exclude these provisions from the CBA and default to

28  the terms of the AMMA.  Therefore, any analysis of Plaintiff's wrongful termination

- 13 -

1  claim would require the Court to interpret these provisions in the CBA and determine if

2  the parties had complied with these provisions.  Specifically, to determine Plaintiff's

3  wrongful termination claim, the Court would be required to interpret the CBA to

4  determine whether Plaintiff (1) worked in a safety sensitive position, (2) reported to work

5  under the influence of, or having present in his body metabolites, of any substance that

6  could adversely affect his ability to perform his job duties in a safe manner, (3) was

7  required to provide some notification about his use of medical marijuana to a company

8  representative before starting work, (4) was required to "use appropriate personnel

9  procedures," such as taking sick leave or requesting a change of duty, (5) was required to

10  consult with a physician or pharmacist to determine whether his use of medical marijuana

11  could interfere with the safe performance of his job, (6) was able to maintain a "constant

12  state of alertness" and was "able to work cooperatively with others in the workplace,"

13  and (7) was engaged in safety-sensitive duty.  Therefore, Plaintiff's claim is

14  "substantially dependent" on the interpretation of the CBA.

15        In response Plaintiff argues that his claim exists independently of the CBA

16  because the CBA is subordinate to the AMMA and by its terms rejects any claim of

17  preemption.  (Doc. 39 at 8-9.)  Plaintiff relies on the sections of the DFWP that state

18  "[n]othing in this Program shall reduce employee rights granted within state medical

19  marijuana laws, including the Arizona Medical Marijuana Act."  (Doc. 1 at 109; DFWP

20  at Sec. X.D; Doc. 1 at 115; DFWP at Sec. XIV.B.)  Plaintiff also relies on the provision

21  in the DFWP that states "[t]o the degree that is a conflict between state medical

22  marijuana laws and this Program, state medical marijuana law shall prevail and control."

23  (Doc. 1 at 109; DFWP at Sec. X.D.)  Thus, Plaintiff argues that his wrongful termination

24  claim under the AMMA is not dependent on any interpretation of the CBA.

25        However, the section of the DFWP that Plaintiff cites to support his argument also

26  states that "[i]ndividuals authorized by state law to use medical marijuana for medicinal

27  purposes must understand that nothing in the law allows them to be impaired by, or under

28  the influence of, medical marijuana while at work."  (*Id.*)  Similarly, the AMMA provides

1   an "employer may not discriminate against a person [who is a medical marijuana
2   cardholder] in hiring, termination or imposing any term or condition of employment or
3   otherwise penalize a person based upon . . . [a] positive drug test for marijuana
4   components or metabolites, unless the [person] . . . was impaired by marijuana on the
5   premises of the place of employment during the hours of employment."  Ariz. Rev. Stat.
6   § 36-2813(B)(2).

7         Plaintiff has not explained how these sections of the AMMA and the CBA are in
8   conflict.  Furthermore, determining whether there is a conflict that would invalidate some
9   portion of the CBA would require the Court to interpret the CBA.  Therefore, to apply
10   Plaintiff's argument that the CBA is subordinate to the AMMA, the Court would be
11   required to interpret the terms of the CBA.  This analysis would require more than a
12   "mere reference" to the CBA.  *See Robinson v. Fred Meyers Stores, Inc.*, 252 F. Supp. 2d
13   905, 912 (D. Ariz. 2002).

14         Because Plaintiff's wrongful termination claim is "substantially dependent" on the
15   interpretation of the CBA, that claim is preempted under § 301 of the LMRA.  *See Allis-*
16   *Chalmers*, 471 U.S. at 220 (when the court finds a state law claim substantially
17   dependent upon analysis of a collective bargaining agreement, generally "that claim must
18   either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract
19   law.")  Although this conclusion resolves Defendant's motion, as set forth below, the
20   Court nonetheless addresses the parties' arguments based on inapposite cases.

21              **2.    The *Robinson* Decision from this District**

22         To further support its preemption argument, Defendant relies upon the *Robinson*
23   decision from this district to argue that "the AMMA expressly subordinates itself to the
24   CBA" because "the text of the AMMA expressly permits employers and unions to
25   negotiate, alter, or even relinquish the basic protections afforded by the Act." (Doc. 40 at
26   5 (quoting Ariz. Rev. Stat. § 23-493.10).)  Defendant states that *Robinson* demonstrates
27   "how quickly this statutory language disposes of the [preemption] inquiry." (Doc. 40 at
28   5.)  However, as set forth below, Defendant characterization of the *Robinson* decision is

1    mistaken, and Defendant erroneously attributes the statutory language of § 23-493.10,

2    which was added in 1994 and which addresses drug testing of employees, to the AMMA

3    § 36-2813(B).

4         In *Robinson*, the plaintiff was terminated for allegedly violating her employer's

5    drug and alcohol policy and sued her employer and the union for several state law claims,

6    including wrongful termination. *Robinson,* 252 F. Supp. 2d at 908.  The court granted the

7    defendant's Rule 12(c) motion and dismissed several of plaintiff's state law claims,

8    including her wrongful termination claim, as preempted by § 301 of the LMRA.  *Id.* at

9    912-13.  The court noted that plaintiff claimed that defendant violated § 23-493, which

10   addresses drug testing of employees.  *Id.* at 912.  The court stated that even if § 23-493

11   provided a cause of action for a violation of its terms, the "statute provides that the terms

12   of a collective bargaining agreement will control when one exists."  *Id.* at 921 n.11 (citing

13   Ariz. Rev. Stat. § 23-493.10 (stating that collective bargaining agreements are "valid and

14   enforceable, notwithstanding the provisions of this article.")).  The court concluded that

15   "[b]ecause the terms of section 23-493 allow a collective bargaining agreement drug

16   testing policy to control, the claim that the defendant violated the statute in the

17   administration of its drug testing policy requires interpretation of the Fred Meyers CBA."

18   *Robinson*, 252 F. Supp. 2d at 913.  Therefore, the court dismissed plaintiff's claim for

19   wrongful termination as preempted. *Id.*

20        In its Rule 12(c) motion, Defendant characterizes *Robinson* as holding that a claim

21   for wrongful termination in violation of the "AMMA" was preempted under § 301

22   because Ariz. Rev. Stat. § 23-493.10—which Defendant states is included in "the text of

23   the AMMA"—provides that the terms of a collective bargaining agreement control when

24   one exists.  (Doc. 40 at 5 (citing *Robinson*, 252 F. Supp. 2d at 913); *see also* Doc. 40 at 7

25   and n.2. (stating that in *Robinson* the plaintiff asserted a claim for wrongful termination

26   in violation of the AMMA, and noting that "the Court acknowledged the claim was based

27   on the AMMA.").)  This is not correct.  The AMMA became effective on December 14,

28   2010, several years after the 2002 decision in *Robinson*.  *See* Ariz. Rev. Stat. §§ 36-

1   2801–36-2819; *Robinson*, 252 F. Supp. 2d 905.   Significantly, § 23-493.10, which

2   provides that the drug testing statutes are subordinated to collective bargaining

3   agreements, and upon which the *Robinson* decision relied in finding preemption, is not

4   part of the AMMA and the AMMA does not include a similar provision.  *See* Ariz. Rev.

5   Stat. §§ 36-2801–36-2819.   Because *Robinson* was decided before the AMMA became

6   effective, that decision could not have involved a claim of wrongful termination based on

7   the AMMA, or whether such a claim would be preempted by § 301 of the LMRA.   Aside

8   from its general discussion of the two-step test for preemption under § 301, *Robinson* is

9   not instructive on whether § 301 preempts Plaintiff's wrongful termination claim based

10  on the AMMA.

11  **3.      Cases Addressing Similar Medical Marijuana Laws**

12  Similarly, Plaintiff also relies on inapposite cases to support his argument that his

13  claim is not preempted.  In his response, Plaintiff cites decisions of courts in states with

14  medical marijuana anti-discrimination provisions that are similar to the provisions of the

15  AMMA.   Plaintiff argues that the courts in these cases held that federal law did not

16  preempt an employment discrimination claim based on the state medical marijuana

17  statute.  (Doc. 39 at 10-11.)   However, these cases did not address preemption under

18  § 301.      Rather, they considered whether federal statutes, including the Controlled

19  Substances Act (CSA), the Americans with Disabilities Act (ADA), and the Food, Drug,

20  and Cosmetic Act (FDCA) invalidated the state medical marijuana laws at issue under a

21  theory of obstacle or conflict preemption.  *See Noffsinger*, 2017 WL 3401260, at *6, *8

22  (holding that the CSA, ADA, and FDCA did not preempt a state statute, Conn. Gen. Stat.

23  § 21a-408p(b)(3), that prohibited employers from discriminating against authorized

24  persons who use medical marijuana); *Callaghan*, 2017 WL 2321181, at *13-14 (holding

25  that the CSA does not preempt the anti-discrimination-in-employment provision of

26  Rhode Island's medical marijuana statute. ).   Plaintiff also cites *Barbuto v. Advantage*

27  *Sales & Mktg LLC*, 477 N.E.3d 37 (Mass. 2017) to support his preemption argument.

28  (Doc. 39 at 11.)  This case also did not involve a collective bargaining agreement and did

1    not address preemption under § 301. *See Barbuto,* 477 N.E.3d at 37. Instead, it

2    addressed whether the plaintiff had stated a claim for "handicap discrimination" under

3    Massachusetts employment discrimination laws. *Id.* at 43. Therefore, these cases are not

4    relevant to the preemption issues raised in Defendant's motion.

5    **V.**    **Conclusion**

6    After considering the pleadings and the parties' briefing on Defendant's

7    Rule 12(c) motion, the Court concludes that judgment on the pleadings is appropriate

8    because Plaintiff's wrongful termination claim in Count One is preempted by § 301 of the

9    LMRA.

10    Accordingly,

11    **IT IS ORDERED** that Defendant M.A. Mortenson Company's motion for

12    judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure

13    (Doc. 34) is **GRANTED** and the Court dismisses Plaintiff's claim in Count One.

14    **IT IS FURTHER ORDERED** that based on Plaintiff's concession that his claim

15    in Count Two does not apply to Defendant M.A. Mortenson Company, Plaintiff's claim

16    in Count Two is dismissed.

17    **IT IS FURTHER ORDERED** that Defendant's motion for summary judgment

18    (Doc. 44) is **DENIED** as moot.

19    **IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment in

20    favor of Defendant M.A. Mortenson Company and terminate this matter.

21    Dated this 14th day of November, 2017.

22

23

24    _____

25                Bridget S. Bade
               United States Magistrate Judge

26

27

28